[No. 4253–II.   Division Two.   December 17, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. PATRICK
AGREN, *Appellant.*

*George L. Wood, Jr.,* for appellant.

*Grant S. Meiner, Prosecuting Attorney,* for respondent.

PETRIE, J.—Defendant, Patrick Agren, appeals the order granting probation entered following jury verdicts of guilty on three counts of assault. We reverse with direction to grant a new trial on all three counts of the information.

We note, preliminarily, that the 3–count information alleged that Mr. Agren committed second degree assault in that he did "knowingly inflict grievous bodily harm" upon three persons on October 30, 1977, by beating each "with his fists." RCW 9A.36.020(1)(b). Following a trial in January 1979, the jury returned verdicts of guilty as charged in the first count and, by special verdicts, "not guilty" of second degree assault but guilty of the lesser included offense of simple assault in the other two counts. RCW 9A.36.040. Subsequently, the trial court granted defendant's motion for new trial, and he was retried on the *same information*

in May 1979. At that time the jury returned verdicts of guilty as charged on counts 1 and 2 and guilty of simple assault on count 3. His appeal is from the order which followed those verdicts.

We hold that as to counts 2 and 3 Mr. Agren was unconstitutionally "twice put in jeopardy" to answer to the crime of second degree assault in violation of the fifth amendment to the United States Constitution and article 1, section 9 of the Constitution of the State of Washington. *Green v. United States,* 355 U.S. 184, 2 L. Ed. 2d 199, 78 S. Ct. 221, 6 A.L.R.2d 1119 (1957); *State v. Schoel,* 54 Wn.2d 388, 341 P.2d 481 (1959).

By the first jury's verdict he was effectively acquitted of the crime of second degree assault as to counts 2 and 3. Under our system of constitutional protection he cannot be "subjected to the hazards of trial and possible conviction more than once for an alleged offense" after having once been acquitted of that offense. *Green v. United States, supra* at 187. Under those circumstances, the appropriate remedy is to remand the cause for new trial limited to the charge of simple assault on counts 2 and 3. *Price v. Georgia,* 398 U.S. 323, 26 L. Ed. 2d 300, 90 S. Ct. 1757 (1970); *United States v. Wilkins,* 348 F.2d 844 (2d Cir. 1965); *Booker v. Phillips,* 418 F.2d 424 (10th Cir. 1969); *State v. Schoel, supra.*

Next, Mr. Agren contends that count 1 should be dismissed because the State failed to prove each element of the crime beyond a reasonable doubt or, alternatively, he was denied a fair trial and should be granted a new trial because (1) the identification procedures were impermissibly suggestive; (2) the prosecutor introduced irreparable error by asking a defense witness if he would submit to a lie detector test; (3) one of the State's rebuttal witnesses was improperly allowed to tell the jury a highly prejudicial statement which had been relayed to her by another person; (4) the jury was improperly instructed as to the meaning of "grievous bodily harm"; or (5) the cumulative effect of all of the above.

Resolution of these questions requires a brief recitation of the facts. All the assaults are alleged to have occurred within moments of each other in a parking lot at the Haguewood Restaurant in Port Angeles at approximately 2 a.m. on Sunday, October 30, 1977. The victim as alleged in count 1 was Mr. Ray Peterson. He testified that another vehicle struck his car while he was attempting to park; that after alighting from his car, he shouted to the four persons who had been in the other car; that a large man returned and struck him repeatedly about the head, face and shoulders. He testified that his nose was broken and he was in excruciating pain. He did not get a good look at his assailant's chin or mouth, but he did recall the man's "heavy eyebrows." After the assault he was able to identify the license of the other vehicle as it drove away. The vehicle was owned by defendant's wife. One of the witnesses to the assaults testified that another man attempted to stop the assailant by saying, "Let's go, Pat."

The following Tuesday, Mr. Peterson was shown a picture of defendant, Patrick Agren, taken 10 years previously. He was not able to identify Mr. Agren (from that picture) as his assailant. Approximately 2 months later Mr. Peterson and another couple (one of whom had also been assaulted by the same assailant in the parking lot) were shown a photo montage of eight persons (including the 10–year–old picture of defendant). None of these persons could identify Mr. Agren as the assailant.

At the commencement of the first trial in January 1979, these same persons encountered Mr. Agren in the foyer of the courthouse and recognized him as the assailant. They had not seen him during the intervening 15 months, but the prosecution had told them that Mr. Agren had grown a beard since 1977. At the second trial, in May 1979, they were permitted to identify him as the person who assaulted Mr. Peterson in October 1977.

Another witness for the prosecution was Richard Bradley. He had known defendant for approximately 21 years and had seen him earlier that evening at the Eagles

Club. He testified that he arrived at the Haguewood parking lot shortly after the assaults had occurred and from a distance of 50 feet, saw two males walking away from the scene of the assaults. One of the victims, pointing to the two males walking away from the scene, told Mr. Bradley, "There is the two people that assaulted us, . . ." Bradley identified one of the males as defendant, Pat Agren.

When asked how he was able to identify Mr. Agren, he replied:

> The silhouette of the person. The build of him. The color of his hair. The suit he had on. All matched the description that, or of the person that I had been with and talked to and walked out of the Eagles Club with.

At an omnibus hearing prior to trial, the prosecution sought and was granted an order directing the defendant to submit to a lineup procedure. The order directed that two lineups be conducted, the first without the defendant and the second with him. For reasons not clearly established from the record before us, but apparently because the victims had told the former prosecutor that they "didn't feel they could identify" their assailant and the suspect had since grown a beard, the prosecutor (who left office prior to the first trial and whose conclusions were only indirectly related to the trial court) "felt that the risks were too great for a lineup and it was not held."

Although defendant moved at both trials to suppress all in-court identification testimony, apparently no written order of the court was ever entered pursuant to CrR 3.6. The only inkling we have as to the two trial courts' reasons for denying the motions is reflected in the proceedings of the second trial. The record reflects the court's oral pronouncement as follows:

> Based on balance, and as counsel knows, here, to afford a fair hearing in trial to both sides, I feel that whatever deficiencies there might be in that identification process are not sufficient to exclude all identification and I think that it's a matter of weight and can be subject to cross-

examination as to the test and for the veracity or precision, if you will, of identification by witnesses, so the motion is denied.

The identification procedures utilized in this case fall far short of models of good police investigation. Nevertheless, considering the totality of the circumstances, we cannot hold that they were so impermissibly suggestive as to undermine the reliability of the in–court eyewitness identification of Mr. Agren as the assailant. We are constrained to agree with the trial court that the factors of reliability outweigh any corrupting suggestiveness, and that the deficiencies in the procedures go essentially to weight rather than substance. *See Manson v. Brathwaite,* 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977). Accordingly, we hold the trial court did not err by denying defendant's motion to suppress the eyewitness identification testimony. *State v. Coburne,* 10 Wn. App. 298, 518 P.2d 747 (1973).

We pause only briefly to consider Mr. Agren's contentions that the evidence was insufficient to sustain his conviction on count 1 and that the jury was improperly instructed as to the meaning of "grievous bodily harm." If the jury believed the testimony of Mr. Peterson and the identification testimony as presented to them, the State sustained its burden of proving every element of the crime of second degree assault. *State v. Salinas,* 87 Wn.2d 112, 549 P.2d 712 (1976). Furthermore, the instruction defining "grievous bodily harm" to which defendant assigns error was substantially similar to the instruction expressly approved in *Salinas.* We find no error in the instruction nor in the trial court's denial of defendant's motion in arrest of judgment.

Before reaching defendant's remaining assignments we must briefly discuss his theory of defense of alibi and the testimony presented in support of that defense.

Mr. Agren readily acknowledged his presence at the Eagles Club and his departure therefrom in his wife's vehicle shortly before 2 a.m., accompanied by his wife and another couple. Those facts were established by several

prosecution witnesses who knew Mr. Agren., However, defendant's testimony and that of his supporting witnesses differs from the prosecution's evidence as to what subsequently occurred. Defense witnesses assert that Ann Agren, defendant's wife, stopped the vehicle after leaving the Eagles Club in order to permit Mr. Agren to talk to a companion with whom he planned to go hunting later that morning. Defense evidence was that Mrs. Agren then drove the other couple to the Haguewood parking lot leaving Mr. Agren with his hunting partner. Defendant and his companion then departed to another restaurant far from the scene. Other defense witnesses placed Mr. Agren at this other restaurant at the time the assaults occurred in the Haguewood parking lot.

One defense witness, John Comstock, rode with Mrs. Agren to the Haguewood restaurant. He testified that there was some commotion at the parking lot after Mrs. Agren parked her car next to another. He described the driver of the other car (apparently Mr. Peterson) as "[r]anting and raving and carrying on and yelling and screaming at Ann or all of us, . . .". Mr. Comstock also testified that the party of three proceeded toward the entrance to the restaurant, Mr. Peterson following and "still carrying on." At that point, Comstock testified, "the next thing I know somebody come from some place, I don't really know, and punched this guy." At the conclusion of cross-examination, the prosecutor asked Mr. Comstock, "Would you be willing to take a lie detector test on your testimony here today?" The court sustained an objection to the question, and defendant subsequently moved for mistrial, which was denied.

■ Quite obviously, except under precisely circumscribed circumstances not present in this case, all trial lawyers should studiously evade references to polygraph tests to avoid any "strong implication" to a jury that a particular witness is a "proven" liar. *State v. Sutherland,* 94 Wn.2d 527, 617 P.2d 1010 (1980). Prosecutors, particularly, are constrained to labor within the restraints of the law, *State v. Torres,* 16 Wn. App. 254, 554 P.2d 1069 (1976), and are

cautioned not to throw the prestige of their public office into the scales against the accused. *State v. Case,* 49 Wn.2d 66, 298 P.2d 500 (1956). Nevertheless, we cannot fault the trial court's discretionary decision to deny defendant's motion for a mistrial. The isolated error was insufficient to warrant a new trial.

Finally, Mr. Agren contends his theory of defense was seriously prejudiced and he was denied a fair trial when, on rebuttal, a prosecution witness was permitted to relate to the jury a highly prejudicial statement Mrs. Agren reportedly made to a third party. We agree and, accordingly, direct that a new trial be granted.

The circumstances which produced this trial error are as follows. All the defense witnesses testified that Mr. Agren was not at the Haguewood parking lot when the assaults occurred. In particular, Mrs. Agren testified that she and her husband, along with Mr. and Mrs. Comstock, had spent the evening dancing and drinking at several local clubs, ending up at the Eagles Club around midnight. At approximately 1:40 a.m., Mrs. Agren testified, they left the Eagles Club intending to go to the Haguewood Restaurant, but her husband got out of the car shortly thereafter to talk to his hunting companion, and she and the Comstocks then proceeded to the Haguewood. As she was parking she noticed her bumper struck a protruding door of the car adjacent to hers. When the driver of the other car (apparently Mr. Peterson) began screaming at her, she and Mrs. Comstock entered the restaurant, and she did not observe any fighting in the parking lot. She testified, "Very definitely" that her husband was not at the parking lot. On cross-examination she testified that she remained inside the restaurant "a minute or so" and denied that she ever asked anyone to go out in the parking lot to check on her husband.

On rebuttal, the prosecution recalled an employee of Haguewood's, Julie Brodhun, who, on the prosecution's case in chief, had testified that while she was drinking coffee inside the restaurant with two intoxicated men, Mrs. Agren came over to her table and spoke to one of the men,

Dick Hinke, who then "got up and left the restaurant." Ms. Brodhun testified that she did not hear what Mrs. Agren said to Mr. Hinke and she was not, at that time, permitted to narrate to the jury what Mr. Hinke told her Mrs. Agren had told him. Mr. Hinke testified that on the morning in question he was "Very intoxicated." He could not "recall" seeing Mrs. Agren that morning and did not "remember" whether anyone asked him to do anything, but he did remember that at one point he went to the parking lot, did not remember what he did there, and then returned to the restaurant.

When Ms. Brodhun was recalled on rebuttal she testified over defense objection that Mr. Hinke told her that Mrs. Agren "asked him to go outside because she was concerned her husband was in a fight and would he help."

The prosecution's theory as to the admissibility of that testimony, as explained to the trial court, was that Ms. Brodhun's testimony was not being introduced to prove the truth of what she said, but was admissible to impeach Mrs. Agren's denial on cross–examination that she had ever asked anyone to help her husband at the parking lot. We hold the trial court's ruling as to the admissibility of Ms. Brodhun's testimony constituted reversible error.

The prosecution's theory of impeachment is called "impeachment by mere contradiction." *Jacqueline's Wash., Inc. v. Mercantile Stores Co.,* 80 Wn.2d 784, 498 P.2d 870 (1972). Evidence sought to be introduced for the purpose of contradiction must, however, pass the test of competency. *Anderson v. Dobro,* 63 Wn.2d 923, 389 P.2d 885 (1964). Clearly, Ms. Brodhun's testimony as to what Mrs. Agren had previously told Mr. Hinke is hearsay evidence: hearsay not only in the sense of attempting to use it to prove the truth or substance of what the ultimate declarant, Mrs. Agren, was supposed to have said, but also hearsay as an oral assertion by a declarant (Hinke) made in court by another (Brodhun) offered in evidence to prove the truth of what Hinke said to Brodhun. That was not impeachment of

Mrs. Agren; it was impeachment of Hinke, the prosecution's own intoxicated witness, who had testified that he did not recall seeing Mrs. Agren and did not remember whether anyone asked him to do anything. *See* ER 804(a)(3).

■ Clearly, therefore, it was error to have permitted Ms. Brodhun to so testify, and the remaining issue is whether the error was so prejudicial as to require reversal and a new trial. Most patently, the effect of the testimony upon the jury was to totally shatter defendant's theory of alibi by a declaration out of the mouth of his wife that he was engaged in a fight in the parking lot. In a case in which the identification evidence of the actual assailant was at least suspect and in which substantial evidence placed this defendant elsewhere during the assault, the error cannot be categorized as trivial, formal, academic, and in no way affecting the outcome of the case. A new trial must be ordered. *State v. Oswalt,* 62 Wn.2d 118, 381 P.2d 617 (1963).

Judgment reversed with direction as to count 1 to grant a new trial and as to counts 2 and 3 to grant a new trial limited to the charge of simple assault.

REED, C.J., and PETRICH, J., concur.