[No. 4971-6-II. Division Two. April 27, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. YONG RIP MASON, *Appellant.*

*Geoffrey C. Cross,* for appellant.

*Don Herron, Prosecuting Attorney,* and *Jerry Horne, Special Deputy,* for respondent.

REED, C.J.—Yong Rip Ludeman, nee Yong Rip Mason, appeals from her convictions on three felony counts of promoting prostitution, RCW 9A.88.080, and two misdemeanor counts of employing a masseuse without a valid license in violation of Pierce County Code 50.16.140. The charges were consolidated for trial in King County following a change of venue from Pierce County. We reverse, for the reasons set forth below.

Defendant was the operator of the Royal Steam Bath (Royal) in suburban Pierce County. She was convicted of

promoting, at the Royal, acts of prostitution by three women: H. Kim, S. Fogel, and S. Scott, and of employing Fogel and Scott without having obtained employee licenses for them. She now argues that her convictions should be reversed because (1) the court wrongfully admitted into evidence some Tacoma–Pierce County Health Department venereal disease contact referral forms; (2) the prosecutor was guilty of misconduct because of remarks he made in the presence of the jury; (3) principles of double jeopardy were violated in the State's charging of three separate counts of promoting prostitution during a 2–month period at the same establishment; (4) the court should have dismissed the charges for violation of JCrR 3.08, the pertinent speedy trial rule.

We believe the crucial issue is the admissibility of the venereal disease contact referral forms. The forms are issued by the federal Venereal Disease Control Division of Health, Education and Welfare (HEW) in Atlanta, Georgia, and are titled, "Venereal Disease Epidemiologic Report." When a person, suspecting he has a venereal disease (VD), reports to a physician or to the county's public health clinic, and the diagnosis is confirmed, a form is filled out with information supplied by the patient. The patient is identified only by coded number, for reasons of confidentiality. The form identifies where and when and from whom the patient thinks he or she got the VD. Ordinarily the patient does not know the true name of the supposed source of the VD when the contact occurred during an act of prostitution. Thus, the identity of the VD source may be given on the form as "Unk" (unknown) or, as in this case, simply as a first name such as "Cindy" or "Jean." The forms are sent to an investigator at the county health department, who attempts to locate the suspected VD source and arrange for him or her to come in for treatment.

Here, various defense witnesses testified that they had visited the Royal, or had worked there, and had never seen any kind of nudity or illicit sexual activity. Defendant and her witnesses testified, in short, that it was a legitimate

massage parlor where one could obtain no more than a steam bath and a bona fide massage. They also testified that two of the key witnesses in the State's case, Mrs. Fogel and Mrs. Scott, were lying about the rampant prostitution they testified was going on at the Royal and had not worked there during the dates charged in the criminal information. Defendant testified further that she knew nothing about Mrs. Scott having contracted a venereal disease at the Royal. In order to rebut the defense testimony, the State sought to introduce the venereal disease contact referral forms.

The prosecution's theory is that the forms were proper rebuttal because (1) one of them, which identifies Mrs. Scott as being the source of VD at the Royal in March of 1979, tends to show that she was in fact employed there during the time charged; (2) they tend to show that Caucasian women were passing VD at the Royal, contrary to the defense contention that only Orientals had been interviewed at the Royal in that connection; (3) they tend to confirm that sexual activity was taking place at the Royal, contrary to defendant's denials; (4) they tend to show that reports were made by people who actually had VD, thereby rebutting the defense suggestion that fake reports were made by disgruntled customers who expected sexual services but were given only bona fide steam baths and massages.

■■ The forms are rank double hearsay. They contain what a patient told an interviewer, who in turn made the actual entry on the form. Thus, they may be admitted—even if relevant and proper rebuttal—only if they fall within the business records exception to the hearsay rule, RCW 5.45.020:

Business records as evidence. A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the

opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.[1]

The business records exception permits admission of a record containing double hearsay only if the third party is a member of the business organization and has a duty to supply the information on the form. *See Young v. Liddington*, 50 Wn.2d 78, 309 P.2d 761 (1957); E. Cleary, *McCormick on Evidence* § 310 (2d ed. 1972). Here, the third party criterion is not satisfied. There is no way to verify in court the reliability of the VD patients/complainants who related the information written on the VD contact referral forms, and who are of course not employees of the health department. *See State v. Kreck*, 86 Wn.2d 112, 542 P.2d 782 (1975). Moreover, it has been held improper to use the business records exception to admit a hearsay medical opinion as to causation of a disease, which in this case would preclude admission of the opinion that the patient contracted VD from a particular person at a particular place, as stated on the forms. *See Liddington*, 50 Wn.2d at 83–85.

The forms may be admitted despite being outside the business records exception, however, if an independent basis for admissibility exists, such as another exception to the hearsay rule. The State argues that such an exception exists under ER 803(a)(4), allowing statements made for purposes of medical diagnosis or treatment. The statements of patients as to the suspected source of their venereal disease were not taken and written on the forms for purposes of treating the declarants, however, and do not fit within this exception. *See* Comment, ER 803(a)(4). Although the forms may have served as a material and effective rebuttal of the defense witnesses, we hold they were not sufficiently reliable to fit within the business records exception or any

---

[1]Contrary to defendant's assertion, admission of hearsay by means of the business records exception does not violate the Sixth Amendment right of confrontation when the records are properly admitted under the statute, RCW 5.45-.020. *State v. Kreck*, 86 Wn.2d 112, 542 P.2d 782 (1975).

other proffered exception to the hearsay rule, and they should have been excluded.[2]

Nor can we say from the record before us—in which testimony of several of the State's witnesses is not reproduced—that the error is harmless. Even measuring the error by the standard for assessing error of nonconstitutional proportions, we cannot say that it was trivial, formal, or merely academic and did not prejudice the substantial rights of defendant or affect the final outcome of the case. *State v. Martin*, 73 Wn.2d 616, 627, 440 P.2d 429 (1968); *State v. Oswalt*, 62 Wn.2d 118, 122, 381 P.2d 617 (1963); *State v. Agren*, 28 Wn. App. 1, 622 P.2d 388 (1980); *cf. State v. Vargas*, 25 Wn. App. 809, 610 P.2d 1 (1980) (discussion of harmless error test for error of constitutional dimensions). We cannot say the jury would not have convicted without the referral forms.

We address briefly some of the other issues in this appeal in the event of a retrial. First, we hold that there was no violation of the right to speedy trial. To make out such a violation on review, defendant must move for dismissal prior to trial. *State v. Williams*, 87 Wn.2d 916, 557 P.2d 1311 (1976); *State v. Barton*, 28 Wn. App. 690, 626 P.2d 509 (1981). No such motion was made in this case.

Second, we must consider defendant's argument that the State should be permitted to charge only one count of promoting prostitution at the Royal during March and April of 1979, rather than splitting the charges into three counts of promoting prostitution, one for each prostitute allegedly employed. She points out that essentially the same evidence was used to convict her of each count and that at most she had a general plan to promote prostitution rather than a separate criminal intent as to each employee.

We view the problem as one of defining the proper

___

[2]As an example of their blatant unreliability, we note that the form purporting to identify Mrs. S. Scott as a source of venereal disease originally had on it the name "Debra" and the health department employee whose testimony laid the foundation for admission of the forms had no idea who had scratched out "Debra" and written in Mrs. Scott's name.

unit of prosecution, *i.e.,* the offense which the legislature intended to create. *See Bell v. United States,* 349 U.S. 81, 99 L. Ed. 905, 75 S. Ct. 620 (1955); Note, *Twice in Jeopardy,* 75 Yale L.J. 262, 313 (1965). The legislature could make a person's simultaneous promotion of prostitution on the part of more than one prostitute a criminal act as to each, liable to cumulative punishment. If the legislative intent is unclear as to multiple punishment, however, we should apply the "rule of lenity" and hold that the defendant can be punished for only one count. *Whalen v. United States,* 445 U.S. 684, 703–04, 63 L. Ed. 2d 715, 100 S. Ct. 1432 (1980) (Rehnquist, J., dissenting).

Thus, in the seminal case of *Crepps v. Durden,* 2 Cowp. 640, 98 Eng. Rep. 1283 (K.B. 1777), a baker's four convictions for selling four hot loaves of bread on Sunday were reduced to one conviction, on the rationale that Parliament had intended to prohibit the exercise of one's "ordinary calling upon the Lord's Day" and not to punish separate acts of baking bread.

Similarly, in *In re Snow,* 120 U.S. 274, 30 L. Ed. 658, 7 S. Ct. 556 (1887), the Supreme Court followed *Crepps* in reversing the consecutive sentences imposed for three counts of continuous, plural cohabitation, each count having charged cohabitation with the same two women in a different year.

In *Bell,* the Supreme Court invalidated consecutive sentences given for two convictions under the Mann Act for the interstate transportation for immoral purposes of two women on the same trip and in the same vehicle. In none of these cases—*Crepps, Snow,* or *Bell*—could the reviewing court find a clear legislative intent to impose cumulative punishment.

The rule of lenity is a canon of statutory construction which applies when a penal statute is ambiguous as to whether the legislative body intended to impose multiple punishment. *Albernaz v. United States,* 450 U.S. 333, 67 L. Ed. 2d 275, 101 S. Ct. 1137 (1981). It forbids courts to proliferate sentences when the legislature has been silent. It "is

designed to prevent multiple judicial punishment for a single legislative offense—to preclude substantive double jeopardy." *Twice in Jeopardy, supra* at 316. Courts in this state have resorted to the rule in a like context, *cf. State v. Arndt,* 87 Wn.2d 374, 385, 553 P.2d 1328 (1976) ("Doubt should be resolved against turning a single transaction into a multiple offense").

We do not find in RCW 9A.88.080 a clear legislative intent to impose multiple punishment upon one person's promotion of prostitution by employing two or more persons simultaneously over a period of weeks in the same location. The statute provides:

> Promoting prostitution in the second degree. (1) A person is guilty of promoting prostitution in the second degree if he knowingly:
> (a) Profits from prostitution; or
> (b) Advances prostitution.
> (2) Promoting prostitution in the second degree is a class C felony.

The apparent evils the legislature sought to attack were "advancing prostitution" and "profiting from prostitution." A person is equally guilty of either of those evils whether he has only one prostitute working for him or several. *See* definitions in RCW 9A.88.060. We find this case substantially indistinguishable from the plural cohabitation in *Snow* and the interstate transportation of two women in *Bell.*[3]

This does not mean, however, that the State cannot charge and attempt to prove multiple counts of promoting the prostitution of the three women. *See* CrR 4.3(a)(2) on joinder of criminal offenses "based on the same conduct or on a series of acts connected together". The State is not forced to elect which of the three counts it will prove and put all of its prosecutorial eggs in one basket. Rather, the rule of lenity simply means that multiple punishments can-

---

[3]We see no such impediment, however, to multiple punishment for two convictions for violation of the Pierce County Code prohibition against employing a person who has no massage business employee's license; each unlicensed employee constitutes a separate violation.

not be imposed, and concurrent sentences must be given if a guilty verdict is returned on more than one count.[4] *See* *State v. Johnson,* 96 Wn.2d 926, 935–37, 639 P.2d 1332 (1982); *State v. Johnson,* 92 Wn.2d 671, 680, 600 P.2d 1249 (1979); *State v. Rhodes,* 18 Wn. App. 191, 567 P.2d 249 (1977).

The convictions are reversed, and the cause is remanded for further proceedings consistent with this opinion.

PETRIE and PETRICH, JJ., concur.

Reconsideration denied June 18, 1982.

---

[4]The question may arise, if the court must impose concurrent sentences if the defendant is found guilty of more than one count, does this also mean that the multiple *convictions* must merge into one conviction? We bear in mind that the double jeopardy clause "'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the offense after conviction. And it protects against multiple punishments for the same offense.'" *Albernaz,* 450 U.S. at 343; *Whalen,* 445 U.S. at 688. We previously stated, based on dictum in *State v. Johnson,* 92 Wn.2d 671, 679–80, 600 P.2d 1249 (1979), that concurrent convictions arising out of "connected" activity had to be consolidated into a single conviction, *see State v. Eppens,* 30 Wn. App. 119, 124–25, 633 P.2d 92 (1981), in the same way a conviction for a lesser–included offense merges into a simultaneous conviction for the greater offense. *State v. Rapp,* 25 Wn. App. 63, 604 P.2d 534 (1979). It now appears, however, from the language in *State v. Johnson,* 96 Wn.2d 926, 930–32, 639 P.2d 1332 (1982), that multiple convictions for different crimes arising from a single act may stand provided the sentences are made to run concurrently. *See also In re Rice,* 24 Wn.2d 118, 163 P.2d 583 (1945).