[No. 36629.   Department Two.   July 25, 1963.]

THE STATE OF WASHINGTON, *Respondent*, v. RAYNALDO
PAYAN JAIME, *Appellant.**

*Howard W. Elofson*, for appellant.

*Lincoln E. Shropshire* and *Wiley G. Hurst*, for respondent.

DONWORTH, J.—Appellant was tried and convicted on two counts: (1) rape committed against the will of, and without the consent of, the prosecuting witness who was then unconscious of the nature of the act, which fact was known to appellant, and (2) second-degree burglary committed under circumstances not amounting to first-degree burglary by entering the dwelling house of another with intent to commit some crime therein.

*Reported in 384 P. (2d) 363.

The trial court denied appellant's motion to dismiss the case at the close of the state's evidence. Appellant did not take the stand nor present any evidence. He made the usual post-trial motions, which were likewise denied.

Judgment and sentence were entered on the verdicts of guilty whereby appellant was ordered to be confined in the state reformatory for a period not exceeding 20 years on the first count and 15 years on the second count (both to run concurrently).

Appellant has been represented by court-appointed counsel both in the trial court and in this court. After giving notice of appeal, appellant petitioned the trial court for leave to proceed in forma pauperis and prayed that he be furnished a transcript of the record and a statement of facts at county expense. The court granted the relief prayed for.

The nine assignments of error may be discussed under three headings: (1) the insufficiency of the evidence to support the conviction as to count 1 (rape), (2) the claim of the erroneous admission of testimony of the prosecuting witness that appellant threatened her, and (3) the insufficiency of the evidence as to count 2 (second-degree burglary).

The state's evidence tended to prove that the prosecuting witness, aged 18, had been married 7 months when she and her husband arrived in Wapato by bus about 6 p.m. on April 13, 1962. The couple had come from California to visit her husband's relatives who were then living in Wapato. She spent the evening in the kitchen of a cafe operated by her husband's aunt. About 11:30 p.m., her husband's uncle took her and her 9-year-old niece to their basement apartment because the prosecuting witness was very tired and wanted to sleep. The uncle left the two girls alone in the apartment.

Between 1 and 2 o'clock in the morning, April 14, 1962, appellant entered the apartment while the girls were asleep. It was then that the act charged in count 1 took place.

As to the first matter above mentioned, we do not deem it necessary to set forth all of the state's evidence in detail.

The principal contention made by appellant is that the testimony of the prosecuting witness that she was asleep when the act was perpetrated and was awakened when appellant bit her neck was unbelievable.

We can infer from questions asked her on cross-examination (appellant did not testify) that appellant's contention was that she had previously invited him to enter the house (as soon as the lights were extinguished) for the purpose of having intercourse.

An employee of the Wapato Police Department, who talked with appellant after his arrest (which was a few hours after the alleged rape), testified:

"A. Very briefly, Raynaldo Jaime stated to me that he had been in this basement apartment and that, on the night of the alleged assault, and that he had had intercourse with the girl. Q. Did he make any statements as to whether he knew this girl or not? A. He stated that he knew this girl and that he had known her for seven or eight years. Q. Did he make any statements as to when he knew her? A. I believe he said back in 1957 or '58 he had known her then. Q. Did he state that he knew her well at that time? A. Well, he stated that he had had intercourse with her during that time, 1957 or '58.

"Mr. Hurst: That is all the questions I have.

"Cross examination by Mr. Elofson: Q. Regarding the statement that Mr. Jaime made to you, did he say that he was invited to that apartment? A. I believe that's in the statement. Q. Your answer is, 'Yes,' that he did state that? A. I think—yes, he stated that he was supposed to come there, I believe. That was the way he put it. Q. And that it was a rendezvous between the two of them, right? A. That is what he said. Q. And that she was more than willing; at least equally willing with him? A. Yes. Q. And he gave this statement to you? A. Yes. Q. Did he state that he was to come in when the lights were to go out? A. Yes."

According to this witness, appellant further stated that he had known the prosecuting witness for seven or eight years (no place was mentioned), and that he had been intimate with her in 1957 or 1958. The prosecuting witness stated that she had never been in the state of Washington in her life until she arrived in Wapato with her husband at 6 p.m. (seven or eight hours prior to the assault) for the

purpose of visiting his relatives. She further testified that she had not asked appellant to come to her room and she had not even talked to any young person during this time.

After weighing all the evidence presented by the state (there being none presented by appellant), the jury chose to believe the testimony of the prosecuting witness. Since the jury, under the instructions given them by the court (which appellant concedes to be correct), found appellant to be guilty of the offense charged in count 1, neither the trial court nor this court can say that the testimony of the prosecuting witness was unbelievable.

When appellant's counsel was concluding his argument on his motion for dismissal in the trial court at the conclusion of the case, the following colloquy took place:

"Mr. Elofson: In response, I freely admit that the technical evidence has been put in that would be sufficient, but that it is unbelievable, so unbelievable that the matter should be taken from the jury. The Court: I think that is for the jury to determine, whether it is believable or unbelievable. Motion will be denied."

That this ruling was correct is shown by our decision in *State v. Gilmore*, 42 Wn. (2d) 624, 627, 257 P. (2d) 215 (1953), in which we said:

"Even if it were incumbent upon the state to prove that the check was signed on July 2nd and no other day, the conflict in the evidence outlined above merely presented a question of fact for the jury. It was within the province of the jury to believe the testimony presented by one side and disbelieve that presented by the other. In this case, the jury chose to believe the state's evidence. The verdict having been based on substantial, competent evidence, it will not be disturbed. *State v. Kirkby*, 20 Wn. (2d) 455, 147 P. (2d) 947; *State v. Rosencrans*, 24 Wn. (2d) 775, 167 P. (2d) 170."

In the case at bar, there was no evidence presented by appellant, and the issue was whether the jury believed the state's evidence and particularly whether it believed the testimony of the prosecuting witness. The verdict of guilty as charged in count 1 disposes of appellant's first contention.

Appellant contends that he was prevented from having

a fair trial because the trial court erred in permitting the prosecuting witness to testify over his objection that he made a threat to harm her after she had been awakened and found out that appellant was not her husband. It is claimed that this was evidence of an independent offense with which appellant had not been charged, and that its admission was highly prejudicial.

The context in which this testimony was admitted was that she testified that she finally had succeeded in getting to her feet after the crime had been committed. The prosecutor asked her: "Why didn't you scream?" She started to answer as follows:

"A. I don't know. I tried to scream. I opened my mouth to scream, and I didn't, I couldn't get a sound out. I guess I was just terribly frightened, because after I was, after I was, while I was struggling with him, he told me, he told me—"

The court excused the jury while counsel argued concerning the validity of appellant's objection. After the court had ruled that the whole transaction was admissible and the jury had returned to the jury box, the prosecuting witness continued her answer to the question:

"A. Well, because he had told me that if I wanted him to do me some harm—"

She was interrupted by the trial judge, who told her to speak louder, after which she continued:

"A. Well, he had asked me if I wanted him to do me some harm. Q. I think you have got that backwards, haven't you? Would you repeat that? A. He asked me if I wanted him to do me some harm. Well, the way, more or less—I don't know if I am putting it right in English. Q. Did he state this in English? A. No, he didn't. Q. This was stated in what? A. In Spanish. Q. At the time did it scare you? A. It sure did, because I didn't know what he was going to do."

■ Appellants cite, in support of this contention, *State v. Goebel*, 40 Wn. (2d) 18, 240 P. (2d) 251 (1952), and two subsequent decisions of this court. We do not regard them as applying to the situation before us. Here there were

not two separate crimes committed. The threat to harm her if she made an outcry was made after the criminal act had been completed. The state's evidence (if believed by the jury) proved that appellant had intercourse with the prosecuting witness while (as he well knew) she was asleep and unconscious of the nature of the act. The subsequent threat did not cause her submission to the act.

When she awoke and finally succeeded in getting on her feet, appellant asked her (in Spanish) if she wanted him to do her some harm. This threat, she said, frightened her and prevented her screaming or making any outcry. Under the circumstances described in the testimony, the threat did not constitute a separate offense. It was part of the res gestae.

Both parties refer to *State v. Falsetta*, 43 Wash. 159, 86 Pac. 168 (1906), which was a prosecution for statutory rape in which, of course, the lack of consent of the prosecuting witness was immaterial. Evidence was admitted, over objection, as to the use of force by the defendant and his possession of a revolver at the time of the alleged act. The applicable headnote which is quoted in the state's brief reads as follows:

"In a prosecution for the statutory offense of rape upon a female under the age of consent, evidence of acts of force is admissible as part of the *res gestae*, although not an element of the crime under the statute."

We think that appellant was not prejudiced by the prosecuting witness' reference to this threat in explaining her failure to scream after the commission of the act had been fully consummated.

The third contention mentioned above is that the state's evidence relating to count 2 (second-degree burglary) was insufficient to support the verdict of guilty.

■ Appellant was charged in this count with wilfully, knowingly, and feloniously entering the dwelling house of John Gamboa (who is the uncle of the husband of the prosecuting witness) with intent to commit some crime therein.

Mrs. John Gamboa testified that her husband had rented the basement apartment in which her 9-year-old grand-

daughter and the prosecuting witness were sleeping on the night of April 13, 1962. Both girls identified appellant as the man who was in the apartment that night. Appellant admitted to the employee of the Wapato Police Department, shortly after his arrest, that he had been present in the apartment that night, although he claimed that he had previously been invited by the prosecuting witness. In her testimony, she denied having even spoken to him before the rape took place.

Thus, there was substantial evidence that appellant entered the Gamboa apartment at night without invitation or permission. The jury must have so found.

The trial court correctly instructed the jury that:

"It is provided by statute that if any person unlawfully enters the dwelling house of another, he is deemed to have entered the same with the intent to commit a crime therein, unless such unlawful entering is explained by testimony satisfactory to the jury to have been made without criminal intent."

Since appellant offered no evidence whatever, the jury undoubtedly found that his unlawful entering of the apartment had not been explained to their satisfaction as having been made without criminal intent.

As pointed out above, concerning the state's evidence as to count 1, it was within the province of the jury to believe or disbelieve the evidence presented by the state. Since there was substantial evidence presented in support of the charge of second-degree burglary contained in count 2, the verdict of guilty will not be disturbed. *State v. Gilmore, supra.*

The judgment and sentence is hereby affirmed as to both counts.

OTT, C. J., FINLEY, WEAVER, and HAMILTON, JJ., concur.