[No. 43704.     En Banc.     November 20, 1975.]

THE STATE OF WASHINGTON, *Petitioner*, v. CHARLES KRECK, *Respondent*.

*Donald C. Brockett, Prosecuting Attorney,* and *LeRoy C. Kinnie, Chief Deputy,* for petitioner.

*Victor J. Felice,* for respondent.

HOROWITZ, J.—On petition of the State, review was granted of a decision of the Court of Appeals, Division Three (12 Wn. App. 748, 532 P.2d 285 (1975)), which reversed the conviction in the superior court of defendant Charles Kreck for second-degree murder, the case being tried to the court. The principal issue is whether admission of a laboratory report of a blood test as evidence under RCW 5.45—The Uniform Business Records as Evidence Act —violates the Sixth Amendment right of confrontation.

On June 14, 1971, defendant, who was living apart from his wife, called the Spokane Police Department to request assistance for his wife, Jocosa, who was then unconscious. Upon arrival, the police found defendant attempting to administer artificial respiration to his wife. It was evident to the police officers, however, that defendant's wife was dead.

Neither police investigation nor autopsy revealed the cause of death. A blood sample from Jocosa Kreck was sent by Dr. Randell E. Davis of the Deaconess Hospital in Spokane, who supervised the autopsy, to Dr. Ted Loomis, the state toxicologist, at the State Toxicological Laboratory at the University of Washington. Subsequently, the police received information the defendant had been planning to rob his wife and had purchased chloroform for this purpose. This information was forwarded to Dr. Loomis by Dr. Davis with the request to test the blood for chloroform. Dr. Loomis then directed Ronald Skinner, a trained chemist on the staff of the toxicological laboratory working under Dr. Loomis' supervision, to test the blood sample for chloroform and ethanol (the ethanol test is made on every blood

sample received). Ronald Skinner did so. The laboratory report of these tests, dated June 22, 1971, was signed by him, identifies the person from whom the sample was taken (Jocosa Kreck), the date the sample was received (June 16, 1971), and the material submitted for examination (blood). The results of the test for chloroform is shown in the report as follows: "Test: chloroform; Result: 26.0 mg%."

During trial Dr. Loomis testified to the way in which the test was conducted, how the report was prepared, and his role as supervisor. He also testified that while he did not personally conduct the test, he did confer with Mr. Skinner in his supervisory capacity and verified the test results. After having been qualified as an expert, Dr. Loomis testified that in his opinion the amount of chloroform found in the decedent's blood, as shown by the report, was the cause of death.

The trial court admitted in evidence both the laboratory report and the testimony of Dr. Loomis, over defendant's objection that he had the right to cross-examine Ronald Skinner before the report could be admitted. Mr. Skinner was not produced as a witness because he was in Germany on business at the time of the trial, and the State made no effort to obtain his testimony. The trial court admitted the report by relying upon RCW 5.45, the Uniform Business Records as Evidence Act, as interpreted in *State v. Boehme*, 71 Wn.2d 621, 430 P.2d 527 (1967), and *State v. Rutherford*, 66 Wn.2d 851, 405 P.2d 719 (1965).[1]

RCW 5.45.020 provides:

A record of an act, condition or event, shall in so far as

[1]The state did not seek to render the report admissible as a certified copy of an official record under RCW 5.44.040, *see Steel v. Johnson*, 9 Wn.2d 347, 115 P.2d 145 (1941); *Hing Wan Wong v. Liquor Control Comm'n*, 160 Conn. 1, 273 A.2d 709 (1970) (reports of state toxicology laboratory are competent evidence of their contents under the public records exception to the hearsay rule); or to claim that no hearsay is involved, because Dr. Loomis personally supervised and verified the test. *See, e.g., Boehme v. Maxwell*, 309 F. Supp. 1106 (W.D. Wash. 1968). We make no determination of admissibility on either of these two grounds.

relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

In *State v. Rutherford, supra,* a criminal case, the court held that under RCW 5.45.020, the chief of materials testing for the Air Force could testify as to the results of physical tests conducted by one of his assistants under his supervision, even though he had not personally observed the performance of the tests. The court stated that either the written record of the tests report or testimony as to the contents of the record by the person who made the record was admissible under the act. In *State v. Boehme, supra,* also a criminal case, the court relying on *Rutherford,* permitted a pathologist from the office of the chief medical examiner of the State of Maryland to testify to the results of tests upon blood samples conducted by an assistant under his supervision and control, although he had not personally observed the tests.

Cases from other jurisdictions hold that where a foundation has been established that the report and test were made in the regular course of business, and there is no question as to the identity of the material tested, the report is admissible in evidence. Annot., 19 A.L.R.3d 1008, 1021-25 (1968).

The report in the instant case is of a chemical blood sample analysis prepared under the supervision of the Washington state toxicologist, who conferred with the chemist conducting the tests, and personally verified the results. The tests were clearly made in the course of the business of the Washington State Toxicological Laboratory. No objection was made below to the reliability of the test, and no attack was made upon the reliability of the tests by testimony offered on defendant's behalf. As later appears in discussing the confrontation clause, the report met the requirements of RCW 5.45.

116

■ Defendant contends, however, the report was inadmissible as violative of the Sixth Amendment in that Mr. Skinner was not produced as a witness and the State made no attempt to obtain his testimony. We disagree.[2] The purpose of the confrontation clause is stated in *Mattox. v. United States*, 156 U.S. 237, 242-43, 39 L. Ed. 409, 15 S. Ct. 337 (1895):

> The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits . . . being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*See also* 5 *Wigmore on Evidence* § 1395 (3d ed. 1940).

This right of confrontation, however, has always been subject to exceptions:

> But this general rule of law embodied in the Constitution . . . intended to secure the right of the accused *to meet the witnesses face to face, and to thus sift the testimony produced against him*, has always had certain well recognized exceptions. As examples are cases where the notes of testimony of deceased witnesses, of which the accused has had the right of cross-examination in a former trial, have been admitted. Dying declarations, although not made in the presence of the accused, are uniformly recognized as competent testimony . . . Documentary evidence to establish collateral facts, admissible under the common law, may be admitted in evidence.

*Dowdell v. United States*, 221 U.S. 325, 330, 55 L. Ed. 753, 31 S. Ct. 590 (1911). These exceptions are subject to modi-

---

[2] The Sixth Amendment's confrontation clause is now binding upon the states under the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965). Washington protects the right of confrontation both by constitution and statute. Const. art. 1, § 22; RCW 10.52.060.

fication and addition, so long as the purpose of the rule is not hindered:

> The exceptions are not even static, but may be enlarged from time to time if there is no material departure from the reason of the general rule.

*Synder v. Massachusetts*, 291 U.S. 97, 107, 78 L. Ed. 674, 54 S. Ct. 330, 90 A.L.R. 575 (1934); *accord, State v. Ortego*, 22 Wn.2d 552, 563, 157 P.2d 320, 159 A.L.R. 1232 (1945). The Massachusetts Supreme Court, admitting in evidence four certificates from the state department of health to prove the alcoholic contents of "moonshine," stated:

> One of the acknowledged exceptions to the face to face rule of evidence is that public records are competent evidence when of probative value respecting an issuable fact. That is an ancient principle of the common law, recognized at the time of the adoption of the Constitution . . . It cannot be thought that the Constitution was intended to close the door to the legislative department of government to establish new public records with like probative value. Existing public records did not become rigid for all time for evidential purposes. Power to add to the varieties of public records under the principles of law prevailing at the time of the adoption of the Constitution is conferred upon the General Court under the grant to make, ordain and establish all manner of wholesome and reasonable laws not repugnant to the Constitution. There is analogy in this respect to the trial by jury preserved in all its essentials by the Constitution, which may be regulated by the Legislature as to details not impairing its essential integrity.

*Commonwealth v. Slavski*, 245 Mass. 405, 415, 140 N.E. 465, 468, 29 A.L.R. 281 (1923); *accord, Kay v. United States*, 255 F.2d 476, 480-81 (4th Cir. 1958).

Exactly when a particular exception to the hearsay rule infringes upon the right of confrontation has not been fully explored by the United States Supreme Court. Guidelines exist in *Dutton v. Evans*, 400 U.S. 74, 86-89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970). In *Dutton* the court expressly refused to equate the confrontation clause and the eviden-

tiary hearsay rule. The court's concern was with the reliability of the evidence. As *Dutton* puts it:

> The decisions of this Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that "the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement."

*Dutton v. Evans, supra* at 89. In Congressional Research Service (Library of Congress), *The Constitution of the United States of America—Analysis and Interpretation* 1214 (1973), the rule in *Dutton* is explained:

> [T]his is to be ascertained in each case by focusing on the reliability of the proferred hearsay statement, that is, by an inquiry into the likelihood that cross-examination of the declarant at trial could successfully call into question the declaration's apparent meaning or the declarant's sincerity, perception, or memory.

*State v. Smith,* 85 Wn.2d 840, 540 P.2d 424 (1975), emphasizes the necessity of reliability of the evidence offered if it is to be admitted without violating the confrontation clause.

The Uniform Business Records as Evidence Act contains five requirements for admissibility, each designed to insure the reliability of the evidence. *See McCormick's Law of Evidence* §§ 307-10 (2d ed. E. Cleary 1972).

1. The evidence must be in the form of a "record." RCW 5.45.020. "The policy underlying the rule suggests that only reports preserved in some relatively permanent manner will have those characteristics relied upon to establish accuracy." McCormick, *supra* at 720. The laboratory report in the instant case met this requirement.

2. The record must be of an "act, condition or event." Accordingly, entries in the form of opinions or statements as to cause are not admissible. *Young v. Liddington,* 50 Wn.2d 78, 85, 309 P.2d 761 (1957). The finding of chloroform content is not an opinion or statement of cause within the meaning of this rule. In *Kay v. United States,* 255 F.2d 476, 481 (4th Cir. 1958), the court stated:

[t]he alcoholic content of the blood, the evidentiary fact sought to be proved by the certificate, may be accurately determined by well recognized chemical procedures. It is an objective fact, not a mere expression of opinion . . .

The laboratory report showing the percentage of chloroform in a blood sample from Jocosa Kreck is an objective fact.

3. The record must be made in the regular course of business. Important to meeting this requirement is the absence of "a motive and opportunity to falsify the record . . ." McCormick, *supra* at 724. The laboratory report meets this requirement; it was made in the regular course of the business of the State Toxicological Laboratory.

4. The record must be made "at or near the time of the act, condition or event . . ." RCW 5.45.020. The laboratory report shows that the blood sample was received at the laboratory on June 16, 1971, and the final report signed on June 22, 1971. The testimony of Dr. Loomis was that the nature and results of the tests are placed on a work sheet by the person conducting the tests, and this information is transcribed by a secretary from the work sheet onto the final report form. This procedure appears to insure against the possibility of inaccuracy by lapse of memory or otherwise. The circumstances and procedure under which the tests were conducted show the report clearly meets this fourth requirement.

5. The court must be satisfied that "the sources of information, method and time of preparation were such as to justify its admission." RCW 5.45.020. McCormick suggests this requirement can usually be met when the record has been made upon the personal knowledge of the recorder. McCormick, *supra* at § 310. Here, the laboratory report was signed by the chemist who personally conducted the tests. This requirement was met.

RCW 5.45.020 contains no requirement that the person who prepared the record be shown to be unavailable before the record can be admitted. "This silence seems

intended to dispense with the requirement." McCormick, *supra* at § 311. This conclusion is both logical and practical. In the routine activity which gives rise to an admissible business record, the persons involved are unlikely to recall the details of the transaction or event in question. McCormick, *supra* at § 312. The laboratory report in the instant case illustrates this principle. Dr. Loomis testified that his laboratory conducts between 2,000 and 2,400 tests per year, which are done by himself and two qualified chemists, including Mr. Skinner. The tests in question were made in June 1971, and the trial was in November 1973. The likelihood that Mr. Skinner, in late 1973, would remember the details of a routine test made over 2 years before, when he has likely made over 1,000 similar tests in the meantime, is remote. The statute was adopted to avoid the necessity of calling such a person as a witness. *Young v. Liddington, supra* at 83.

Moreover, the reliability of the report is protected by the rule that the court's discretion in admitting the report is subject to review for manifest abuse of discretion. *De-Young v. Campbell*, 51 Wn.2d 11, 17, 315 P.2d 629 (1957); *Cantrill v. American Mail Line*, 42 Wn.2d 590, 698, 257 P.2d 179 (1953).

■ The great majority of cases in other jurisdictions have upheld the admissibility of a laboratory report or similar record in the face of a Sixth Amendment objection. *See, e.g., Kay v. United States*, 255 F.2d 476, 480-81 (4th Cir. 1958) (duly-attested copy of certificate reporting alcoholic content of blood sample admissible as official record —no confrontation clause violation); *State v. Torello*, 103 Conn. 511, 131 A. 429 (1925) (certified copy of record of state chemist admissible as official document for proving alcohol content of liquor purchased by defendant—no confrontation clause violation); *People v. Porter*, 46 App. Div. 2d 307, 362 N.Y.S.2d 249 (Sup. Ct. App. Div. 1974) (log book record of blood sample alcohol test admissible as business record—no confrontation clause violation); *Robertson v. Commonwealth*, 211 Va. 62, 175 S.E.2d 260 (1970) (at-

tested copies of laboratory reports of chemical analysis by state medical examiner of vaginal swabs from alleged rape victim admissible as official record—no violation of confrontation clause). Additional cases are cited in the margin.[3]

We hold, therefore, that this laboratory report, because it meets the requirements for admissibility of RCW 5.45.020 and because the circumstances under which it was prepared demonstrate its trustworthiness, is sufficiently reliable to meet the reliability requirement of the confrontation provision of the Sixth Amendment as well as the corresponding Washington provisions contained in Const. art. 1, § 22, and RCW 10.52.060.

We turn to an examination of defendant's remaining assignments of error.

Defendant contends the State failed to prove the crime charged of second-degree murder, defined in RCW 9.48.040(2) (felony murder). The trial court found defendant guilty of second-degree assault, a felony, under RCW 9.11.020(2), and therefore second-degree murder. However, the felony in RCW 9.11.020(2) is not committed unless chloroform is administered with the intent "to enable or assist" the assailant in committing "any crime." The trial court did not state what that crime was. The State points out that it did prove an additional crime, namely burglary,

---

[3]See also United States ex rel. Lurry v. Johnson, 378 F. Supp. 818, 822 (E.D. Pa. 1974); Henson v. State, ........ Del. ........, 332 A.2d 773, 775 (1975); Commonwealth v. Slavski, 245 Mass. 405, 140 N.E. 465, 29 A.L.R. 281 (1923); State v. Durham, 418 S.W.2d 23 (Mo. 1967); People v. Nisonoff, 293 N.Y. 597, 59 N.E.2d 420 (1944); Commonwealth v. Coldsmith, 176 Pa. Super. 283, 106 A.2d 649 (1954); Evans v. State, 480 S.W.2d 387 (Tex. Crim. App. 1972); Bracy v. Commonwealth, 119 Va. 867, 89 S.E. 144 (1916); State v. Finkley, 6 Wn. App. 278, 492 P.2d 222 (1972).

Defendant characterizes the Skinner report as crucial. Neither RCW 5.45 nor the above cases holding laboratory reports admissible, limit admissibility to noncrucial evidence. If the evidence is deemed reliable so as to be admissible without violating the confrontation clause (Mancusi v. Stubbs, 408 U.S. 204, 213, 33 L. Ed. 2d 293, 92 S. Ct. 2308 (1972)), the question of the crucial nature of the evidence should make no difference.

and that the administration of chloroform was in furtherance of that crime. The court found defendant enlisted the aid of two 16-year-old boys in the plan to break into the home of defendant's estranged wife and recover some furniture and that the chloroform was purchased and used for the purpose of quieting the decedent should she offer any resistance. The undisputed evidence also shows defendant even suggested that wide straps be used to confine his wife should she resist because the straps would leave no marks. We agree that the evidence described is substantial evidence that defendant administered the chloroform "to enable or assist himself" in committing the crime of second-degree burglary as defined in RCW 9.19.020. *See State v. Jaime*, 62 Wn.2d 610, 616, 384 P.2d 363 (1963). Accordingly, defendant was properly held guilty of felony murder as charged.

Defendant next contends the testimony of Dr. Sol Levy did not comply with the Laws of 1973, 1st Ex. Sess., ch. 117, § 10, p. 801. He contends Dr. Levy neither examined defendant nor formed a diagnosis of defendant's mental condition. Regardless of the reach of this portion of the statute (repealed, Laws of 1974, 1st Ex. Sess., ch. 198, § 9, p. 791), defendant's contentions are not supported by the record. The record shows Dr. Levy did examine defendant out of court for an hour and was therefore competent to give an opinion based upon this examination. In addition, defendant's counsel told the court he would not object to the questioning of Dr. Levy and in fact, did question Dr. Levy himself as to his diagnosis. Therefore there was no error permitting him to answer. *State v. Jones*, 70 Wn.2d 591, 597, 424 P.2d 665 (1967); *Seth v. Department of Labor & Indus.*, 21 Wn.2d 691, 693, 152 P.2d 976 (1944).

Defendant also argues the four findings of fact to which he assigns error are not supported by evidence. He objects to the first finding of fact that "the defendant . . . administered chloroform to his wife . . . as a direct result of which [she] died . . ."; and the third finding of fact that "prior to the commission of the crime the defend-

ant was able to control himself, and thus maintain his employment with the State Highway Department"; the fourth finding of fact, that on the day of the crime defendant "did not demonstrate any symptoms of insanity"; and the seventh finding of fact that "the defense failed to meet its burden of showing that the defendant was legally insane at the time of the commission of the crime."

█ The record shows there is substantial evidence upon which these findings could be based. The Supreme Court should not disturb them. *House v. Erwin*, 83 Wn.2d 898, 900, 524 P.2d 911 (1974).

█ Defendant finally contends the initial police investigation leading to the issuance of a search warrant was illegal. We do not agree. Defendant rented one-half of a garage which was divided in two by a partition. With the permission of the rental manager the police entered the unrented half of the garage, pried off a board on the partition, and saw a paper bag within the partition. At that point they returned to the police station, obtained a search warrant, and then returned and recovered the bag and found that it contained a broken chloroform bottle. The initial investigation was legal, the police had the permission of the rental manager to make this search of the unrented part of the garage. *State v. Erho*, 77 Wn.2d 553, 562, 463 P.2d 779 (1970); *State v. Kearney*, 75 Wn.2d 168, 172, 449 P.2d 400 (1969).

Reversed.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

Petition for rehearing denied February 2, 1976.