[No. 33808-1-I.    Division One.    April 29, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. BOYD
ALLEN FOSTER, *Appellant*.

*Lenell R. Nussbaum,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Amy Freedheim* and *Michele A. Hauptman, Deputies,* for respondent.

KENNEDY, A.C.J. — Boyd Foster appeals his first degree child molestation conviction. The six-year-old complaining witness was permitted to testify during the trial via one-way closed-circuit television.. Foster claims that allowing such testimony violated his right to confront the child witness under the state and federal constitutions and deprived him of due process of law and his right to trial by jury. We disagree, and affirm the conviction.[1]

The statute providing for testimony through closed-circuit television reads in pertinent part as follows:

> On motion of the prosecuting attorney in a criminal proceeding, the court may order that a child under the age of ten may testify in a room outside the presence of the defendant and the jury while one-way closed-circuit television equipment simultaneously projects the child's testimony into another room so the defendant and the jury can watch and hear the child testify if:
>
> (a) The testimony will describe an act or attempted act of sexual contact performed with or on the child by another or describe an act or attempted act of physical abuse against the child by another;
>
> (b) The testimony is taken during the criminal proceeding;
>
> (c) The court finds by substantial evidence, in a hearing conducted outside the presence of the jury, that requiring the child to testify in the presence of the defendant will cause the child to suffer serious emotional or mental distress that will prevent the child from reasonably communicating at the trial. If the defendant is excluded from the presence of the child, the jury must also be excluded;
>
> . . . .

---

[1]Foster also contends that he was deprived of effective assistance of counsel at trial, on a matter unrelated to the testimony of the child witness via closed-circuit television. We treat this issue in the unpublished portion of this opinion.

(e) The court finds that the prosecutor has made all reasonable efforts to prepare the child for testifying, including informing the child or the child's parent or guardian about community counseling services, giving court tours, and explaining the trial process. If the prosecutor fails to demonstrate that preparations were implemented or the prosecutor in good faith attempted to implement them, the court shall deny the motion[.]

RCW 9A.44.150(1)(a), (b), (c) and (e).

In the present case two competency hearings were held, one in which the child witness was in Foster's presence in the courtroom, and the other by way of one-way closed-circuit television in which the child was out of Foster's presence, in the judge's chamber, accompanied by the prosecutor, defense counsel, and a victim's advocate. During the first competency hearing, after saying that she was six years old and in the first grade, and that she had gone to Kid's Court the previous Saturday, and after answering the prosecutor's questions about the difference between the truth and a lie, the child repeatedly responded that "maybe" she would be able to tell the truth about what happened, or that she "didn't know" if she would be able to do so. The prosecutor eventually elicited the reason for the child's trepidation:

Q. If I ask you what happened with Spud [Foster's nickname], will you tell me the truth or will you tell me a lie?

A. I don't know.

Q. If I tell [you] that you have to tell me the truth, will you tell me the truth?

A. I don't know.

Q. Is it because of the courtroom?

A. Yes.

Q. Are you feeling shy because Spud is here?

[objection to question as leading overruled]

Q. If you couldn't see Spud, would you be able to tell what happened?

A. Yes.

Q. If you couldn't see him, would you be able to tell me the truth about what happened?

A. Yes.

Q. It is because you can see him that you feel that you can't tell the truth?

A. Yes.

Q. You don't want to say anything about what happened, you don't want to talk about it, because you see him?

A. Yes.

Q. Are you afraid that something might happen if you tell the truth?

A. No.

Q. It's just because you see him, that makes you scared?

A. Yes.

Report of Proceedings vol. I, at 80-81.

Later in the hearing, the court and the prosecutor asked the child whether it would help if she covered her eyes. She still responded that she did not know if she could tell the truth about what had happened, and that it was Foster's presence in the room that made her feel scared.

The child's behavior changed dramatically during the second competency hearing, held via one-way closed-circuit television a few days later. At this hearing, the child promptly promised to tell the truth about what had happened between her and Foster. At the end of the hearing, not in response to a question, the child asked, "Where is Spud?" When told he was in another room, the child asked whether he could hear her. The prosecutor responded, "Yes, he can hear you, you just can't see him." The child then said, "I don't care if he can hear me, I just don't want to see him." Report of Proceedings vol. II, at 244.

At the conclusion of this second hearing, the court found

the child witness competent, noting "a great deal of difference between the child that testified the other day and the child who testified today. The child today was clearly competent . . . . Clearly something was definitely bothering her when she testified at the first competency hearing." Report of Proceedings vol. II, at 250. The court continued:

Furthermore, it would certainly appear that she is definitely afraid of the defendant. There is no indication that the defendant has made threats, but clearly the child is in fear. She expressed that fear the other day when she testified. She expressed the fear today. She expressed it when she was leaving my chambers. She expressed it, not only in words, but in the way that she communicated in the hearing. It is quite clear that she is afraid of the defendant. . . .

The question is what the legislature meant by "serious emotional distress." I believe that did encompass this sort of situation. The child is obviously in fear. She's expressed it. Her manner in court indicates that. Her manner in the state's offer of proof concerning what her parents related indicates this had an effect on her. I don't think it requires a psychologist's testimony, but I think it is reasonable to believe that there is substantial evidence that were she required to testify in court, one, she wouldn't do it; two, she would certainly be stressed out to a significant degree. I can't say that it would last for days or it would have a long-standing effect. I can say, from observing this, and making inferences, that the stress would be substantial.

Report of Proceedings vol. II, at 252.

The court then entered written findings and conclusions, stating in part:

[The child] will be unable to testify in front of the defendant and she will suffer severe emotional or mental distress if forced to testify in front of the defendant.

. . . .

There is substantial evidence that requiring [the child] to testify in front of the defendant will cause her to suffer seri-

ous emotional or mental distress that will prevent her from reasonably communicating at trial.

Clerk's Papers at 46-47.

Trial proceeded, and the child testified by one-way, closed-circuit television. Foster was convicted of molesting the child, as charged. This timely appeal followed.

## I

For purposes of the federal constitutional analysis, Foster concedes, and we agree, that under *Maryland v. Craig*, 497 U.S. 836, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990) the Washington statute is constitutional on its face.[2] Foster argues that Washington's statute is unconstitutional *as applied in this case*, however, in that he contends that the evidence in this case did not establish sufficiently serious emotional distress to pass federal constitutional muster. Foster also argues that the confrontation clause contained in Wash. Const. art. I, § 22 is broader than its federal counterpart, so that for purposes of the state constitutional analysis, the statute is unconstitutional on its face because it allows something less than *literal* face-to-face confrontation when the child witness is present and otherwise competent to testify.

■ Ordinarily, where arguments are based on parallel provisions of the federal and state constitutions, the state issue will be addressed first. *See, e.g., State v. Hopson*, 113 Wn.2d 273, 278, 778 P.2d 1014 (1989) (citing *State v. Coe*, 101 Wn.2d 364, 373, 679 P.2d 353 (1984) and *State v. Wethered*, 110 Wn.2d 466, 471, 755 P.2d 797 (1988)). The rule is not invariable, however, so that whenever it is necessary to fully understand the federal standard in order to

---

[2]In *Craig*, the United States Supreme Court upheld the constitutionality of a Maryland statute that is very similar to Washington's, in that it allows testimony by one-way, closed-circuit television upon a determination by the trial judge that "testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate." *Craig*, 497 U.S. at 841 (citing Md. Cts. & Jud. Proc. Code Ann. § 9-102(a)(1)(ii) (1989)).

determine the state standard, it is permissible to examine the federal standard first. *Cf. Hopson*, 113 Wn.2d at 278. This is such an instance. Accordingly, we first examine the federal standard as pronounced by the United States Supreme Court in *Craig*.

The Sixth Amendment to the United States Constitution provides that a person charged with a crime "shall enjoy the right . . . to be confronted with the witnesses against him[.]" Before *Craig* reached the United States Supreme Court, the Maryland Court of Appeals had held in the same case that Maryland's closed-circuit television statute violated the Sixth Amendment to the United States Constitution under *Coy v. Iowa*, 487 U.S. 1012, 108 S. Ct. 2798, 101 L. Ed. 2d 857 (1988) (holding unconstitutional a statute that permitted a screen to be placed between the child witness and the victim, so as to block the witness's view of the defendant). The United States Supreme Court reversed, stating that *Coy* did not stand for the proposition that there are no exceptions to the general rule that the accused has the right to meet face to face those witnesses who appear at trial to testify against him. Rather, *Coy* stands for the proposition that valid exceptions to the right require a showing of something more than the generalized, legislatively imposed presumption of trauma underlying the statute at issue in *Coy*. *See Craig*, 497 U.S. at 844-45 (citing *Coy*, 487 U.S. at 1021).

█ The Supreme Court concluded in *Craig* that " 'the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial,' a preference that 'must occasionally give way to considerations of public policy and the necessities of the case[.]' " *Craig*, 497 U.S. at 849 (citations omitted, emphasis in original). Denial of confrontation is permitted only where "necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." 497 U.S. at 850.

██ The Court held:

[I]f the State makes an adequate showing of necessity, the

state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant.

*Craig,* 497 U.S. at 855. The finding of necessity must be a case-specific one. The trial court must (1) determine whether use of the one-way, closed-circuit television procedure is necessary to protect the welfare of the particular child witness whose testimony is sought; (2) find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant; and (3) find that the emotional distress suffered by the child witness in the presence of the defendant is more than de minimis, i.e., more than " 'mere nervousness or excitement or some reluctance to testify'." 497 U.S. at 856 (quoting *Wildermuth v. Maryland,* 310 Md. 496, 530 A.2d 275, 289 (1987)). The Court in *Craig* specifically declined to decide the minimum showing of emotional trauma required for use of testimony via closed-circuit television because the Maryland statute before the Court required a determination that the child witness will suffer " 'serious emotional distress such that the child cannot reasonably communicate.' " 497 U.S. at 856 (quoting MD. CTS. & JUD. PROC. CODE ANN. § 9-102(a)(1)(ii)). This standard, the Court determined, "clearly suffices to meet constitutional standards." *Id.*

Because the United States Supreme Court did not decide the minimum showing of emotional trauma required, because the Court relied in part on the reasoning of the Maryland Court of Appeals in *Wildermuth,* and because the *Wildermuth* court concluded that the evidence in that case was not sufficient to establish serious emotional distress such that the child could not reasonably communicate in the presence of the defendant, Foster argues that *Wildermuth* sets the evidentiary standard to be applied to the statutory threshold question in all cases. Foster argues further that the evidence in this case is nothing more than was found to be insufficient in *Wildermuth.*

In *Wildermuth*, two experts testified that the nine-year-old child witness in that case would find it "very difficult" to testify, that it would be "almost impossible" for the child to answer questions in a crowded courtroom regarding emotionally charged facts, "specifically in front of her father" (the accused). *Wildermuth*, 530 A.2d at 288. The *Wildermuth* court found this showing to be insufficient, in that neither expert differentiated between the trauma to the particular child witness in that case as opposed to all children in general, and because the trial court had not personally observed the child witness during a competency hearing. 530 A.2d at 288-89. The court concluded that "serious emotional distress such that the child cannot reasonably communicate" effectively defines "serious emotional distress" as a condition under which the child "cannot reasonably communicate" at trial, 530 A.2d at 286, and equated this with the "unavailability" prong of *Ohio v. Roberts*: [3] "As we have explained, we are persuaded that if testimony in open court will indeed 'result in the child [witness] suffering serious emotional distress' as that phrase is statutorily defined, there is sufficient unavailability." *Wildermuth*, 530 A.2d at 287.

We agree with Foster that *Wildermuth*, dealing as it did with a Maryland statute that is essentially identical to our Washington statute, correctly defines the statutory threshold showing that must be made: Based on substantial evidence, the trial court must determine that the child witness is effectively "unavailable" in the constitutional sense, that is, that although she is present and can testify outside the presence of the defendant by closed-circuit television, she cannot reasonably testify in the presence of the defendant due to serious emotional or mental distress caused by the presence of the defendant. Put another way, neither the statute nor the Sixth Amendment requires

---

[3]448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980) (Confrontation Clause allows testimony of declarant taken at preliminary hearing to be introduced at trial where prosecutor establishes necessity based on unavailability of declarant at time of trial, and where sufficient cross-examination took place at preliminary hearing to establish reliability of testimony).

the State to show that the child will suffer permanent psychic scarring if she is forced to testify in front of the defendant; rather, the State must show that the child's emotional distress is sufficiently serious that she cannot reasonably communicate at trial while in the physical presence of the defendant. If this is so, the child is "unavailable" in the constitutional sense, and the trial court must then "balance[ ] the strength of the state's case without the testimony of the child against the defendant's constitutional rights and the degree of infringement of the closed-circuit television procedure on those rights[,]" RCW 9A.44.150(1)(f), and determine whether the child will be allowed to testify by closed-circuit television, or whether the State will instead be required to proceed to trial without the testimony of the child.

We disagree with Foster that the evidence in this case fails to meet the *Wildermuth* standard. Clearer, stronger evidence is difficult to envision. The child was unable to promise to tell the truth at the first hearing because Foster was present, and she was frightened of him. She willingly promised to tell the truth at the second hearing, and spontaneously said that it was okay that Foster could hear her, and that she just did not want to be able to see Foster. It was eminently reasonable for the trial court to have concluded that emotional distress due to Foster's physical presence was the crucial factor that prevented the child from promising to tell the truth at the first hearing. Our system of justice requires that all witnesses promise to testify truthfully. A child under the age of 10 who cannot make that promise due to fear or other emotional distress caused by the physical presence of the defendant, but who can freely make that promise if allowed to testify outside the defendant's presence by means of one-way, closed-circuit television is effectively "unavailable" to testify in the defendant's presence within the meaning of *Craig* and *Roberts*. The degree of seriousness of the emotional distress required by RCW 9A.44.150(1)(c) is that degree which renders the child unable to reasonably communicate in the defendant's presence at trial—no more

and no less. A child who cannot promise to tell the truth due to emotional distress caused by the physical presence of the defendant is per se unable reasonably to communicate in the defendant's presence at trial, because she cannot be a witness unless and until she can make that very promise. Because substantial evidence supports the trial court's determination that the child witness in this case could not reasonably communicate under oath in Foster's presence due to serious emotional distress within the meaning of the statute, we conclude that the statute as applied did not violate Foster's Sixth Amendment right to confront the child victim at trial.[4]

Foster also claims that the State failed to adequately prepare the child victim to testify; therefore, he concludes, the statute as applied violated his Sixth Amendment right of confrontation. The statute requires that as a prerequisite to allowing testimony by closed-circuit television, the court must find:

> that the prosecutor has made all reasonable efforts to prepare the child for testifying, including informing the child or the child's parent or guardian about community counseling ser-

---

[4]The Maryland Court of Appeals concluded in *Wildermuth*, 530 A.2d at 289, that in making the determination of whether to allow testimony by one-way, closed-circuit television, personal observation of the child witness by the judge, while not a sine qua non, "should be the rule rather than the exception." The Maryland Court of Appeals reached a similar conclusion in *Craig*, before that case reached the United States Supreme Court. *See Craig*, 497 U.S. at 858-59. The United States Supreme Court rejected any such categorical evidentiary prerequisites. *See Craig*, 497 U.S. at 859-60. Although here, the trial judge did observe the child witness being questioned both in Foster's presence and by one-way, closed-circuit television outside his physical presence, we can envision circumstances wherein a trial court might not wish to subject the child to a competency hearing in the defendant's presence, based, perhaps, on the nature of the alleged abuse (e.g., mutilation or some other horrible set of facts). The wisdom of the *Craig* court's rejection of the Maryland court's reasoning becomes obvious when one contemplates the potential dangers of setting hard and fast evidentiary prerequisites. We do agree with the *Wildermuth* court's observation that expert testimony is not always required to establish the necessary predicate for the trial court's determination. *Wildermuth*, 530 A.2d at 289. Here, for example, expert testimony was clearly unnecessary, but in other cases where the reason for the child's testimonial difficulty might be less clear, expert testimony could be helpful. We firmly believe that trial courts must retain the ability to address each case on its own facts and circumstances, within the statutory framework.

vices, giving court tours, and explaining the trial process. If the prosecutor fails to demonstrate that preparations were implemented or the prosecutor in good faith attempted to implement them, the court shall deny the motion[.]

RCW 9A.44.150(1)(e).[5]

It is clear from the record that the prosecutor was taken by surprise at the first competency hearing, when the child stated that she might not be able to promise to tell the truth because Foster's presence in court made her scared. The prosecutor had not initially contemplated taking the child's testimony by way of closed-circuit television. The record reflects that the prosecutor inquired of the child's parents following the first competency hearing, and learned that the usually talkative child had been unusually silent on the way home from court and during the evening, and that she had expressed surprise that Foster had been in the courtroom. By the time of the second competency hearing, trial had commenced and the jury had been impaneled. Foster objected to the lack of any counseling designed to help the child witness overcome her fear of testifying in Foster's physical presence, but did not request that the trial be delayed for this purpose. The record reflects that the child witness had participated in Kid's Court. She testified that she learned at Kid's Court about the importance of telling the truth and that if she did not know the answer to a question, she was to say so rather than lie. As did the trial court, we conclude that the child was adequately prepared to testify, as long as she was not forced to do so in the presence of the defendant, and that the child's inability to testify in Foster's presence was not because of any failure by the prosecutor in good faith to prepare the child to testify.

In sum, we conclude that the application of RCW 9A.44.150 to Foster was not unconstitutional under the Sixth Amendment. The record supports the trial court's

---

[5]This statutory requirement is consistent with the showing required by *Ohio v. Roberts*, 448 U.S. at 74 (witness not constitutionally "unavailable" unless prosecutor has made a good faith effort to obtain the witness's presence at trial).

determination that the child victim's testimony via one-way, closed-circuit television was appropriate under the circumstances presented here.

## II

We now turn to Foster's claim that RCW 9A.44.150 is unconstitutional on its face under art. I, § 22 of the Washington Constitution, which provides: "In criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face[.]" Foster argues that this clause confers broader rights upon an accused than does the Sixth Amendment. In his *Gunwall*[6] analysis, Foster relies most heavily on differences in the textual language of the parallel constitutional provisions, the fact that Washington based its Bill of Rights on those of other states, rather than on the Bill of Rights contained in the United States Constitution (which was not applicable to the states in 1889), and the differing structures of the Washington and United States Constitutions (federal constitution grants power to federal government while state constitutions put limits on power of state government). *See generally Gunwall*, 106 Wn.2d at 61-62. Foster points specifically to the decision of the Indiana Supreme Court in *Brady v. Indiana*, 575 N.E.2d 981 (Ind. 1991), holding the Indiana statute allowing one-way closed-circuit television of a child witness's testimony to be unconstitutional on its face, in light of the language of the confrontation clause contained in the Indiana State Constitution: "[T]he defendant's right to meet the witnesses face to face cannot simply be read out of our State's Constitution." *Brady*, 575 N.E.2d at 988. *See also Commonwealth v. Ludwig*, 527 Pa. 472, 594 A.2d 281, 284 (1991) ("Unlike its federal counterpart, [the confrontation clause in the Pennsylvania Constitution guaranteeing the accused the right to meet the witnesses against him face to face] does not reflect a 'preference' but clearly, emphatically and unambiguously

---

[6]*State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986).

requires a 'face to face' confrontation. This distinction alone would require that we decline to adopt the United States Supreme Court's analysis and reasoning in *Maryland v. Craig*.")

The State points, in turn, to the decisions of other states which also have identical or virtually identical language to that found in the confrontation clause of our state constitution. For example, Ohio's Constitution guarantees an accused the right "to meet the witnesses face to face." Ohio Const. art. I, § 10. Addressing and rejecting a challenge under that clause to the facial constitutionality of a statute allowing a child victim to testify by videotape, the court stated:

> Though our Constitution uses the specific phrase "face to face," that phrase has not been judicially interpreted at its literal extreme. This is because the purpose of the "face to face" clause of the Ohio Constitution . . . is to guarantee the opportunity to cross-examine and the right to observe the proceeding. Taking the phrase "face to face" to its outer limits, one could argue that a witness who looks away from the defendant while testifying is not meeting the defendant "face to face." As we have indicated, a criminal defendant is ordinarily entitled to a physical confrontation with the accusing witnesses in the courtroom. Yet, the value which lies at the core of the Confrontation Clauses does not depend on an "eyeball to eyeball" stare-down. Rather, the underlying value is grounded upon the opportunity to observe and to cross-examine. The physical distance between the witness and the accused, and the particular seating arrangement of the courtroom, are not at the heart of the confrontation right.

*State v. Self*, 56 Ohio St.3d 73, 564 N.E.2d 446, 452 (1990) (footnote and citation omitted).

Similarly, Kentucky's Constitution guarantees an accused the right to meet witnesses "face to face." Ky. Const. § 11. Kentucky has a statute similar to our Washington statute that permits the use of television cameras to present children's testimony in sex abuse cases based on a sufficient showing of necessity. In *Commonwealth v. Willis*,

716 S.W.2d 224 (Ky. 1986) the court upheld the validity of Kentucky's statute in the face of a challenge under the state constitution. Construing the words "face to face," the court stated: "There is no constitutional right to eyeball to eyeball confrontation. The choice of the words 'face to face' may have resulted from an inability to foresee technological developments permitting cross-examination and confrontation without physical presence." 716 S.W.2d at 230. Because the statute did not limit a defendant's right to cross-examination or prevent the defendant and the jury from seeing and hearing the witness and assessing credibility, the court upheld the constitutional validity of the statute.

Regardless of whether the Washington Constitution confers broader rights upon an accused than does the federal constitution, it is settled that the right conferred by art. I, § 22 is not absolute. For example, our Supreme Court has recognized that neither the federal nor the state provision guaranteeing the right to confrontation "has been read literally, for to do so would result in eliminating all exceptions to the hearsay rule." *State v. Ryan*, 103 Wn.2d 165, 169, 691 P.2d 197 (1984). Moreover, although given the opportunity on several occasions to rule that Washington's confrontation clause affords an accused greater rights than those found in the Sixth Amendment to the United States Constitution, no Washington appellate court has done so,[7] and this court has on at least one occasion rejected the premise outright. *See State v. Florczak*, 76 Wn. App. 55, 71, 882 P.2d 199 (1994), *review denied*, 126 Wn.2d 1010 (1995).

Nothing contained in Foster's *Gunwall* analysis persuades us that art. I, § 22 of the Washington Constitution requires a literal, physical face-to-face confrontation in the courtroom in every case. As our Supreme Court observed in *State v. Kreck*, 86 Wn.2d 112, 116-17, 542 P.2d 782 (1975) the exceptions to the general right of face-to-

---

[7]*See, e.g., State v. Palomo*, 113 Wn.2d 789, 794, 783 P.2d 575 (1989), *cert. denied*, 111 S. Ct. 80 (1990); *State v. Whisler*, 61 Wn. App. 126, 810 P.2d 540 (1991).

face confrontation are not static, and are subject to modification from time to time, so long as the constitutional purpose of the rule is not hindered. The purpose of the Sixth Amendment right of confrontation was to prevent depositions or ex parte affidavits being used against the prisoner; rather, the accused was to have an opportunity to test the recollection of the witnesses by means of cross-examination, and to have the ability to compel the witnesses to face the jury so that the jurors might determine by their demeanor whether their testimony is worthy of belief. *Kreck*, 86 Wn.2d at 116. Although the *Kreck* court was referring to the Sixth Amendment and not the parallel Washington provision, we believe this same purpose underlies the confrontation clause contained in art. I, § 22. But Foster argues that literal face-to-face confrontation is automatically required in every case in which a child witness under the age of 10 is found competent to testify, regardless of whether the child is emotionally capable of testifying in the presence of the accused—if she is not, Foster contends, then the State must rely entirely upon the child-hearsay statute[8] where it is

---

[8] RCW 9A.44.120.

A statement made by a child when under the age of 10 describing any act of sexual contact performed with or on the child by another, describing any attempted act of sexual contact with or on the child by another, or describing any act of physical abuse of the child by another that results in substantial bodily harm as defined by RCW 9A.04.110, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings, including juvenile offense adjudications, in the courts of the state of Washington if:

(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness: *Provided,* That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party his or her intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the adverse party with a fair opportunity to prepare to meet the statement.

applicable, and forgo live testimony altogether. However, the ability to cross-examine a child witness by means of one-way closed-circuit television provides a defendant with even greater protection from the possibility of unjust conviction than does the child-hearsay statute. Not only does closed-circuit television allow for full cross-examination of the child witness, but it also allows the jury the opportunity to observe the child during testimony, and to consider from her demeanor whether she might be testifying falsely. Although the trial judge is required to test child-hearsay for sufficient indicia of reliability to serve as a substitute for cross-examination before admitting such evidence, *see Ryan*, 103 Wn.2d at 175-76, we deem it safe to presume that most experienced defense lawyers would much prefer to cross-examine a live witness before a jury of twelve than to argue the so-called "*Ryan* factors" in a pretrial hearing before a single trial judge. Indeed, we fail to see the logic of Foster's argument that the closed-circuit television statute violates the right to confrontation contained in our state constitution although the child-hearsay statute does not. Although we remain confident in the ability of our trial courts to properly apply the "*Ryan* factors" to child-hearsay, we believe that the child-hearsay statute is, in practical terms, a less attractive alternative than the opportunity for live testimony via one-way closed-circuit television, with full opportunity for cross-examination of the child witness, and with full opportunity for the jury to observe the witness's demeanor on the witness stand.

■ We agree with those courts that have held that the rights conferred under confrontation clauses providing for "face to face" meetings are not absolute. What must be preserved are the rights of cross-examination and the ability of the trier of fact to see, hear, and assess the credibility of the witness. Our statute preserves these essentials. Testimony of a child witness taken via one-way closed-circuit television pursuant to RCW 9A.44.150 is

subject to cross-examination. Moreover, the statute requires that defense counsel be present in the room with the child, and that all parties in the room be on camera.[9] The defendant must be able to communicate constantly with the defense attorney by electronic transmission, and must be granted reasonable court recesses during the child's testimony for person-to-person consultation with defense counsel.[10] As discussed above, testimony via closed-circuit television is not permitted without a showing, by substantial evidence, that "requiring the child to testify in the presence of the defendant will cause the child to suffer serious emotional or mental distress that will prevent the child from reasonably communicating at the trial."[11] We conclude that the safeguards contained in RCW 9A.44.150 are sufficient to protect a defendant's state constitutional right to meet the witnesses against him "face to face." We hold the provisions of RCW 9A.44.150 here at issue to be constitutional under Wash. Const. art. I, § 22. For the

---

[9]RCW 9A.44.150(1)(j), (l).

(j) All parties in the room with the child are on camera and can be viewed by all other parties. If viewing all participants is not possible, the court shall describe for the viewers the location of the prosecutor, defense attorney, and other participants in relation to the child;

. . .

(l) The court imposes reasonable guidelines upon the parties for conducting the filming to avoid trauma to the child or abuse of the procedure for tactical advantage.

The prosecutor, defense attorney, and a neutral and trained victim's advocate, if any, shall always be in the room where the child is testifying. The court in the court's discretion depending on the circumstances and whether the jury or defendant or both are excluded from the room where the child is testifying, may remain or may not remain in the room with the child.

[10]RCW 9A.44.150(1)(h).

(h) When the court allows the child to testify outside the presence of the defendant, the defendant can communicate constantly with the defense attorney by electronic transmission and be granted reasonable court recesses during the child's testimony for person-to-person consultation with the defense attorney[.]

[11]RCW 9A.44.150(1)(c).

The court finds by substantial evidence, in a hearing conducted outside the presence of the jury, that requiring the child to testify in the presence of the defendant will cause the child to suffer serious emotional or mental distress that will prevent the child from reasonably communicating at the trial. If the defendant is excluded from the presence of the child, the jury must also be excluded[.]

same reasons as previously stated in our discussion of the federal constitution, we also hold that as applied to Foster, RCW 9A.44.150 did not deprive him of the right to confront witnesses under our state constitution.

## III

Foster also claims that application of the statute to him violated his due process rights to present a defense and to a jury trial. He argues that allowing the child witness to testify via closed-circuit television deprived the jury of the opportunity to view him and the witness as they confronted each other, and that it reduced the 12 jurors' eyes and ears to one set—that of the television camera.

Foster's defense was that the child victim made up the molestation story. Nothing about the presentation of the child's testimony by closed-circuit television prevented Foster from presenting this defense. The jury was in the same room as Foster during the televised testimony, and had the opportunity to observe Foster during the child's testimony. It seems unlikely that Foster would have received any benefit from having the jury observe the child in Foster's presence; to the contrary, the trial judge perceived from the child's behavior as well as from her words that the child was afraid of Foster. A similar perception on the part of the jury could hardly have benefited Foster, even if the child could have been persuaded to promise to tell the truth in his presence. Moreover, even though only one video camera recorded the child's testimony, each of the 12 jurors was able to see and hear based upon his and her respective individual vantage point and interpretation, in the same manner as if the child had been in the courtroom. There was no violation of Foster's due process right to present a defense or of his right to trial by jury.

For the foregoing reasons, the decision of the trial court is affirmed.

A majority of the panel having determined that only

the foregoing portion of this opinion will be published in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

WEBSTER and AGID, JJ., concur.

Review granted at 130 Wn.2d 1001 (1996).